■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL SCOTT, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Beldock, J.), rendered October 21, 1980, convicting him of criminal sale of a controlled substance in the second degree and criminal sale of a controlled substance in the third degree (two counts), upon a jury verdict, and imposing sentence.

Judgment reversed, on the law, and matter remitted to the Supreme Court, Queens County, for further proceedings consistent herewith. No questions of fact have been raised or considered.

On Friday, April 11, 1980, defendant and counsel appeared in court and both the prosecutor and the defense stated that they were ready to proceed with the trial. For several reasons, including a shortage of potential jurors, the court's involvement in a hearing in another matter, and other (unspecified) preliminary matters, the defendant's trial was adjourned until after the weekend, at which time, according to the court, "actual selection of the jury" would commence. However, one prospective juror was sworn and seated in the jury box.

When court reconvened the following Monday, the defendant failed to appear. During a recess, the District Attorney's office

and defense counsel unsuccessfully attempted to locate the defendant. After the lunch break, Justice Beldock opined that the defendant voluntarily absconded and stated that he intended to proceed with the trial *in absentia*. A bench warrant was issued for the defendant's arrest, the one juror was excused, and court was adjourned until the following day. Efforts to locate the defendant continued, but to no avail. Jury selection commenced the next day, and the defendant's trial was conducted without his presence.

A criminal defendant's right to be present at his trial is encompassed within the confrontation clauses of the Federal and State Constitutions (US Const, 6th Amdt; NY Const, art I, § 6) and the Criminal Procedure Law (CPL 260.20). As is true of other constitutional and statutory rights, an accused may waive his right to be present at trial (*United States v Tortora*, 464 F2d 1202, 1208, cert den *sub nom. Santoro v United States*, 409 US 1063; *People v Epps*, 37 NY2d 343, cert den 423 US 999). However, because "the right is of a fundamental constitutional nature * * * the validity of any waiver * * * must be tested according to constitutional standards" (*People v Parker*, 57 NY2d 136, 140). The test is whether the defendant knowingly, voluntarily, and intelligently relinquished his known right (*People v Parker, supra,* p 141).

In *Parker* (*supra,* p 141), the Court of Appeals stated that, "[i]n order to effect a voluntary, knowing and intelligent waiver, the defendant must, at a minimum, be informed in some manner of the nature of the right to be present at trial and the consequences of failing to appear for trial * * * This, of course, in turn requires that defendant simply be aware that trial will proceed even though he or she fails to appear."

The court also recognized that the record may provide a basis for implying a waiver "as a matter of law from the circumstances" (*People v Parker, supra,* p 141). For example, in *Taylor v United States* (414 US 17), cited by the *Parker* court, waiver was implied because the defendant absented himself voluntarily after attending the opening of his trial. The Supreme Court explained (p 20) that "[i]t seems equally incredible to us, as it did to the Court of Appeals, 'that a defendant who flees from a courtroom in the midst of a trial — where judge, jury, witnesses and lawyers are present and ready to continue — would not know that as a consequence the trial could continue in his absence' ".

The *Parker* court concluded that the defendant, who had disappeared prior to the commencement of her trial, did not knowingly, voluntarily and intelligently relinquish her right to

be present. The court noted that the record was "devoid of any evidence indicating that defendant was ever apprised or otherwise aware that her trial would proceed in her absence" (*People v Parker, supra,* p 141). Moreover, there was nothing in the record to provide a basis for implying a waiver as a matter of law from the circumstances. When she disappeared, the defendant was not, as in *Taylor v United States* (*supra*), " 'in the midst of a trial' " (*People v Parker, supra,* p 142), nor was she named as a defendant in a case involving multiple defendants, as in *United States v Tortora* (*supra*) (*People v Parker, supra,* p 142).

Similarly, in the case at bar, there is no evidence in the record that the defendant was advised that the trial would proceed in his absence, nor is there any reason to believe that the defendant was otherwise aware of such an eventuality. Though the court reminded the defendant of his responsibility to return on Monday, this reminder plainly does not satisfy the requirement stated in *Parker* that the accused "at a minimum, be informed in some manner of the nature of the right to be present at trial and the consequences of failing to appear for trial" (57 NY2d, at p 141). Furthermore, there is no basis in the record for implying a waiver. In our view, placing one prospective juror in the jury box "for certain procedural reasons" was not of such significance that the defendant " 'would * * * know that as a consequence [of his failure to return to court] the trial could continue in his absence' " (*Taylor v United States, supra,* p 20). Furthermore, assuming that the defendant did waive his right to be present, trial *in absentia* was not automatically authorized. "Rather, the trial court must exercise its sound discretion upon consideration of all appropriate factors, including the possibility that defendant could be located within a reasonable period of time, the difficulty of rescheduling trial and the chance that evidence will be lost * * * In most cases the simple expedient of adjournment pending execution of a bench warrant could provide an alternative to trial *in absentia* unless, of course, the prosecution can demonstrate that such a course of action would be totally futile" (*People v Parker, supra,* p 142). No evidence appears in the record that the afore-mentioned factors were sufficiently considered in determining whether or not to proceed with the trial. Under all of the circumstances, it was error for the court to proceed with the defendant's trial, and, accordingly, the conviction must be reversed (see *People v Rivera,* 103 AD2d 225).

We note that although the trial was held prior to the decision in *Parker* (*supra*), we recently held in *People v Rivera* (*supra*) that *Parker* may be applied retroactively to cases pending on direct appeal (accord *People v Thompson,* 94 AD2d 898, 899-900).

In addition to this error, other errors, as well, were committed during the course of the trial. First, the arresting officer testified that, on separate occasions, the defendant was seen driving a 1977 and 1979 Lincoln Continental. Further prosecution testimony disclosed that at least one of the Continentals was owned by the defendant. In an effort to neutralize the inference that these automobiles were purchased by the defendant from the proceeds of drug transactions, an inference which, if drawn by the jury, might impair his entrapment defense, the defense attempted to present the testimony of a bus company's claims manager. The People requested an offer of proof, and counsel represented that the witness would testify that the bus company paid the defendant $317,895 in settlement of an accident in which the defendant lost an arm. The People objected to this testimony on the ground that it was being offered solely to elicit juror sympathy. The court ruled that, unless the defense could show that the proceeds from the settlement were used to purchase the cars, the proffered testimony would not be allowed. Defense counsel replied that he could not "surmount that obstacle" and did not produce the witness.

As stated by the Supreme Court in *Chambers v Mississippi* (410 US 284, 302), "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense". Consequently, a defense witness's testimony should not be prospectively excluded unless it is offered palpably in bad faith (*People v Gilliam,* 37 NY2d 722, revg 45 AD2d 744, on the dissenting opn of Hopkins, J.; *People v McClinton,* 75 AD2d 900). No basis appears in this record for concluding that the claims manager's testimony was offered palpably in bad faith. Testimony that the defendant was seen on separate occasions driving two late-model Continentals was elicited by the People from which it could be inferred that the defendant had been engaged in substantial drug transactions. The defendant should have been permitted to respond through the proffered testimony.

Second, the court instructed the jury concerning interested witnesses, and in so doing mentioned the name of a defense witness who was the defendant's friend. In *People v Bell* (38 NY2d 116, 120) the Court of Appeals restated that "[t]rial courts are entrusted 'to give adequate and balanced instructions to the jury in a criminal case' ". It was improper for the trial court in the case at bar to single out a defense witness for the interested witness charge (see *People v Streeter,* 67 AD2d 877).

Finally, during its deliberations, the jury asked to hear the arresting officer's testimony. Without summoning counsel, the Trial Judge directed a court officer to find out which portion of

the officer's testimony the jury wanted to hear. Thereafter, when counsel returned to the courtroom, the Judge informed counsel that the jury had requested the "testimony of Officer Reich", and then further informed them that he "told the court personnel to find out if they want all of Officer Reich's testimony or only the direct or only the cross or what part they wanted". Subsequently, a response was received through the court officer that the jury wanted to hear only the direct testimony, which testimony was then read to them.

CPL 310.30 in relevant part provides that, "[a]t any time during its deliberation, the jury may request the court for further instruction or information * * * with respect to the content or substance of any trial evidence * * * Upon such a request, the court *must* direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, must give such requested information or instruction as the court deems proper." (Emphasis added.)

The court, rather than communicating with the jury through court personnel, was obligated to summon counsel and return the jury to the courtroom, and then either have granted the jury's request or sought clarification in counsels' presence (cf. *People v Britt,* 43 NY2d 111). Mollen, P. J., Weinstein, Rubin and Eiber, JJ., concur.